IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDWARD L. THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 10-674-SLR ) |
| WARDEN PERRY PHELPS, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 5th day of April, 2011, having screened the case pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that plaintiff may proceed against defendants Tracy Wilkins ("Wilkins"), Capt. Rispoli ("Rispoli"), and Capt Fowler ("Fowler"); and the remaining defendants and claims against them are dismissed as frivolous pursuant to 28 U.S.C. § 1915 and § 1915A, for the reasons that follow:

1. **Background.** Plaintiff Edward L. Thompson ("plaintiff"), a prisoner incarcerated at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed this complaint pursuant to 42 U.S.C. § 1983.[1] He proceeds pro se and has been granted leave to proceed without prepayment of fees.

2. **Standard of Review.** This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

3. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

4. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for

failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

5. A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has

---

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

not shown - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

6. **Discussion**. The complaint contains five counts. Count one alleges retaliation for filing a grievance; count two alleges deprivation of the right to due process in the receipt of a false disciplinary report, no procedural due process during a hearing, and placement in isolation and administrative segregation; count three alleges deliberate indifference to serious medical needs; count four alleges violations of due process for the failure to respond to appeals, letters, and grievances; and count five alleges due process violations in failing to reinstate plaintiff's job. Defendants are sued in their individual and official capacities. Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.

7. Plaintiff filed a medical grievance on August 2, 2008 regarding medical treatment, and asked for something in writing concerning the status of his health condition/disease. The grievance was heard on September 16, 2008 and denied; plaintiff appealed, and the appeal was also denied. On September 25, 2008, plaintiff was transferred from the minimum security building and placed in isolation on pre-hearing detention in the Security House Unit ("SHU") as the result of a letter found on the desk of defendant Tracy Wilkins ("Wilkins"), a registered nurse. The letter was allegedly placed on Wilkins' desk on September 15, 2008, one day before plaintiff's grievance was heard. Wilkins reported that the type-written letter was received from plaintiff.[3]

---

[3]The letter mentioned that plaintiff belonged to a club and that, if any harm came to him as a result of lack of treatment, the same would be expected of Correctional

-4-

8. Plaintiff was advised of the infraction and orally pled "not guilty." He did not receive a copy of the disciplinary report nor was he shown a copy of the "so-called letter." He was advised he would remain in isolation for fifteen days and then moved to administrative segregation in SHU while the matter was investigated. Plaintiff was moved from isolation on October 9, 2008. He received a copy of the disciplinary report on December 11, 2008.

9. Upon his transfer to administrative segregation, plaintiff was housed in an upper tier despite the fact that he has medical limitations. Plaintiff has degenerative disc disease and uses a cane for support. Plaintiff was cuffed behind his back when escorted from the upper tier and had no real support as he descended two flights of stairs. SHU correctional officers requested plaintiff's removal to a lower tier, but the request was denied by defendants Rispoli and Fowler.

10. The previous March, plaintiff had submitted an application to the parole board for a commutation of sentence.[4] Plaintiff appeared before the board on December 2, 2008 but, because there was a pending disciplinary action, the parole board deferred its recommendation until after disposition of the disciplinary report. Due to the investigative delay, plaintiff sought intervention from the parole board on two occasions and also wrote to prison officials. Plaintiff did not appear before the parole board until August 2009.

---

Medical Services ("CMS") employees. Wilkins reported that plaintiff has an infectious disease but did not qualify for treatment "per medical doctor or for compassionate release that he desires." (D.I. 2, ex. A)

[4]Plaintiff notes that he sought a parole hearing long before the issue of a written letter for a medical modification for release was ever raised.

11. The investigation took 166 days. Plaintiff alleges that he was: (1) not afforded a hearing; (2) not present during a hearing; (3) not allowed to call witnesses; (4) not allowed to face his accuser; and (5) not given an opportunity to see the evidence against him. Plaintiff was not present at the final hearing wherein he was found "not guilty." (*Id.* at ex. F) He received the "not guilty" finding on March 16, 2009.

12. On March 19, 2009, plaintiff was transferred from SHU to the medium security building. He was not returned to his previous housing unit, and he was terminated from his prison job. Plaintiff returned to a prison job in August 2009, but with a decrease in pay. Plaintiff was advised by Warden Perry Phelps ("Phelps") that he had placed plaintiff in isolation and administration segregation due to security concerns.

13. **Due Process**. Plaintiff raises due process claims against Richard Porter ("Porter"), Thomas Seacord ("Seacord"), Christopher Cessna ("Cessna"), Ed McGee ("McGee"), Major James Scarborough ("Scarborough"), and Wilkins relative to receipt of a false disciplinary report, placement in isolation, 166 days in SHU administrative segregation, and denial or failure to provide a hearing. (D.I. 2, ¶¶ 51-56) In addition, he alleges that Phelps, "by respondeat superior," violated his rights by "having plaintiff moved to isolation and SHU." (D.I. 2, ¶ 50) Finally, plaintiff alleges that Phelps, Porter, Seacord, Cessna, McGee, and Scarborough violated his due process rights when they failed to respond to his letters and grievances complaining of a lack of hearing and violations of his right to due process. (*Id.* at ¶ 61)

14. Plaintiff does not have a protectable liberty interest in a particular custody classification and, therefore, cannot prevail on his claim. It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in

assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne*, 427 U.S. at 243; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. Indeed, inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Hence, plaintiff's placement in SHU administrative segregation and the failure to return him to his previous housing assignment, despite a "not guilty" finding, does not rise to the level of a constitutional violation. Accordingly, the court finds that plaintiff fails to state a claim of constitutional dimension with respect to his custody level classification and housing in SHU and his claim will be dismissed accordingly.

15. Moreover, neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). "As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (finding that "administrative segregation is the sort of confinement that

inmates should reasonably anticipate receiving at some point in their incarceration."). Courts have found that a prisoner's "procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

16. The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin*, 515 U.S. at 480 (quoting *Hewitt v. Helms*, 459 U.S. at 468). In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). The Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See Young v. Beard*, 227 F. App'x 138 (3d Cir. 2007) (not published). Thus, with regard to the limited duration of time plaintiff spent in isolation, he fails to state a constitutional claim on the facts alleged. *See Henderson v. Kerns-Barr*, 313 F. App'x 451 (3d Cir. 2008) (not published).

17. To the extent plaintiff raises a claim that he did not receive the procedural due process he was due, again he cannot prevail. If "restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentenced imposed by a court

of law,'" then the prisoner does not have a "protected liberty interest" and the "state owed him no process before placing him in disciplinary confinement." *Mitchell v. Horn*, 318 F.3d at 531; *see also Henderson v. Kerns-Barr*, 313 F. App'x 451 (3d Cir. 2008) (not published) (assuming that the plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights). Inasmuch as plaintiff has no constitutional right to avoid a short confinement in isolation or housing in SHU, he has no right to process surrounding it.

18. Finally, plaintiff's fifteen days in segregation, even if the result of alleged false disciplinary actions, did not trigger the protections of the Due Process Clause. *See Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (prisoner's confinement in administrative segregation for fifteen months did not impose an atypical and significant hardship on prisoner). For the above reasons, the court will dismiss as frivolous the due process claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).[5]

19. **Employment.** Plaintiff was removed from his prison job following his placement in isolation and SHU. Plaintiff alleges that Ed Bower ("Bower") and Ed

---

[5]Plaintiff alleges Wilkins violated his right to due process by filing a false disciplinary report in retaliation for his naming Wilkins in a medical grievance he filed. (D.I. 2, ¶ 56.) He will be allowed to proceed with this claim. Plaintiff will also be allowed to proceed with his claim that Rispoli and Fowler violated his right to be free from cruel and unusual punishment and treatment and placed his health at risk by housing him in SHU's upper tier. (*Id.* at ¶¶ 57, 58) *See Muhammad v. Department of Corr.*, 645 F. Supp. 2d 299 (D.N.J. 2008) (The deprivations alleged by state inmate who had a prosthetic lower left leg, relating to his transfer to the upper bunk in a cell that was not handicapped accessible and that had limited access to a shower, were sufficiently serious to state an Eighth Amendment claim regarding conditions of confinement against the corrections officers who executed the transfer).

Moore ("Moore") violated his due process rights relative to his prison employment. (D.I. 2, ¶¶ 59, 60) Plaintiff, however, has no constitutional right to prison employment. Indeed, prisoners have no entitlement to a specific job, or even to any job. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989). It well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the Fourteenth Amendment. *Id.*; *see also Brian v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) (inmates expectation of keeping job is not a property interest entitled to due process protection); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (prisoner's expectation of keeping prison job does not amount to a property interest entitled to due process protection); *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (assignment to job as law clerk does not invest inmate with a property interest in continuation as such); *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (Constitution does not create a property interest in prison employment); *Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987) (inmates have no constitutional right to be assigned a particular job). For the above reasons, the court will dismiss as frivolous the employment claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

20. **Conclusion**. Based upon the foregoing analysis, the court has identified what appear to be cognizable and non-frivolous claims against Wilkins, Rispoli, and Fowler. The remaining defendants and claims against them are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

IT IS FURTHER ORDERED that:

1. The Clerk of Court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(3) and (d)(1), plaintiff shall complete and return to the Clerk of Court an **original** "U.S. Marshal-285" forms for **remaining defendants Tracy Wilkins, Capt. Rispoli, and Capt. Fowler**, as well as for the Attorney General of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to 10 Del. C. § 3103(c). **Plaintiff has provided the court with copies of the complaint, exhibit C, and memorandum (D.I. 2, 3, 4) for service upon the remaining defendants. Plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint until all "U.S. Marshal 285" forms have been received by the Clerk of Court. Failure to provide complete "U.S. Marshal 285" forms for each remaining defendant and the attorney general within 120 days of this order may result in the complaint being dismissed or defendants being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this

jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** \*\*\* When an amended complaint is filed prior to service, the Court will **VACATE** all previous Service Orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). \*\*\*

8. **Note:** \*\*\* Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. \*\*\*

_____
UNITED STATES DISTRICT JUDGE